**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRAIN L. INGRAM<br><br>Plaintiff,<br><br>v.<br><br>INV. KYRIAKO VOGIATZIS, INV. CHRIS CONVERSE, INV. COLIN J. GRIFFIN, INV. BRYAN HAMMOND, and the CITY OF AURORA, IL<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:21-CV-xxxxx |

**<u>COMPLAINT</u>**

NOW COMES the Plaintiff, BRIAN L. INGRAM, by and through his attorney, GENEVA L. PENSON, and complaining against the Defendants, INV. KYRIAKO VOGIATZIS, INV. CHRIS CONVERSE, INV. COLIN J. GRIFFIN, INV. BRYAN HAMMOND, and the CITY OF AURORA, Illinois states as follows:

INTRODUCTION

1. This action is brought seeking damages as redress for Defendants' violations of the Plaintiff's rights enumerated under the Fourth and Fourteenth Amendments to the Constitution of the United States of America, which violations resulted from the Defendants' unlawful use of excessive force against the Plaintiff, connected with an incident occurring on May 2, 2019 wherein Defendants took Plaintiff to the ground, punched Plaintiff multiple times in the face, and performed an illegal search of Plaintiff's person, purportedly recovering a controlled substance from between his buttocks, resulting in bodily and personal injury, which caused the Plaintiff damages, including personal and pecuniary injuries.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Sec.1331 and Sec.1343(a)(3) as the Federal Claims are brought under 42 U.S.C. Sec.1983 and venue pursuant to 28 U.S.C. Sec.1391(b) as the majority of parties reside in this district and the events giving rise to the claims occurred in this district. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. Sec.1367(a).

## THE PARTIES

3. On May 3, 2019 and at all relevant times herein, the Plaintiff Brain Ingram was citizen of the United States and enjoyed all the rights and entitlements enumerated in the Constitution of the United States of America and all Amendments thereto.

4. On May 3, 2019 and at all relevant times herein, the Defendant Kyriako Vogiatzis was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Vogiatzis is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

5. On May 3, 2019 and at all relevant times herein, the Defendant Chris Converse was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Converse is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

6. On May 3, 2019 and at all relevant times herein, the Defendant Colin Griffin was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Griffin is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

7. On May 3, 2019 and at all relevant times herein, the Defendant Bryan Hammond was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Hammond is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

8. On May 3, 2019 and at all relevant times herein, the Defendant City of Aurora was a municipal corporation organized and chartered under the laws of the State of Illinois, obligated to indemnify employees for judgments resulting from conduct occurring within the scope of employment and employing unknown police officers or police personnel herein. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments and employees and for injury occasioned thereby. It was also the public employer of all of the individual Defendants.

## STATEMENT OF FACTS

9. Plaintiff was arrested by officers of the Aurora Police Department on or about May 3, 2019. He was charged with Unlawful Possession of a Controlled Substance, a charge which was subsequently dismissed.

10. On May 03, 2019, Aurora Police Officers, Inv. Griffin and Hammond were traveling eastbound on Indian Trail Road in Aurora, Illinois when they observed a vehicle speeding (45 mph in a posted 35mph zone) and not having the rear registration plate light directly in front of them.

11. Inv. Griffin and Hammond initiated a traffic stop of said vehicle in the parking lot of 1255 Farnsworth Ave., Aurora, Illinois.

12. Prior to Inv. Griffin and Hammond's approach of the vehicle, they claimed to have observed that the front passenger, Brian Ingram, reached around his left side and lower his arm down toward the center consol.

13. Inv. Griffin approached the driver's side of the vehicle and made contact with the driver, Kristian Cano.

14. Inv. Hammond approached the front passenger's side of the vehicle and made contact with the passenger, Ingram

15. The Investigators claimed they observed an open can of beer in a cup holder between the two front seats, an open bottle of vodka on the front passenger floor and detected the odor of burnt cannabis emitting from the interior of the vehicle.

16. Inv. Griffin ordered Cano to exit the vehicle and searched him. The search was negative for contraband.

17. Inv. Hammond ordered Ingram to exit the vehicle and searched him. That

search was negative for contraband.

18. Inv. Hammond subsequently searched the interior of the vehicle. He located a half- folded dollar bill on the driver's seat, unfolded it and located a plastic bag containing an off-white powdered substance.

19. Inv. Hammond believed that substance to be cocaine and arrested the driver, Kristian Cano for unlawful possession of a controlled substance.

20. After Cano was arrested, Ingram was not released by the Aurora Police Officers.

21. Ingram did not receive any citations for any illegal transportation of alcohol by a passenger.

22. Ingram remained hand-cuffed for a period of time until Inv. Converse arrived on scene.

23. There was no basis to hold Ingram on scene and prolong the traffic stop.

24. Inv. Converse conducted a secondary, unnecessary, unreasonable, and warrantless search of Ingram, moving, squeezing, and/or manipulating Ingram's buttocks in the process.

25. Ingram remained handcuffed during the second search.

26. Upon searching Ingram a second time, Inv. Converse claimed he felt a foreign object move in between Ingram's buttocks.

27. Inv. Converse did not consult with the Kane County State's Attorney's Office to request a search warrant.

28. Inv. Converse continued his invasive search. Inv. Converse claimed Ingram was squeezing his buttocks together and pushing off the hood of the vehicle.

29. Two officers took Ingram to the ground. There on the ground, Inv. Vogiatzis and/or other Defendants punched Ingram in the face multiple times.

30. Inv. Converse continued his search.

31. From the outside of Ingram's pants, Inv. Converse pinched a foreign object from between Ingram's buttocks with his right thumb and index finger.

32. Inv. Converse then pushed this item down Ingram's left pant leg, and Inv. Converse recovered a plastic bag.

33. The bag was opened and contained a substance believed to be cocaine and heroin.

34. Ingram was then transported to Aurora Police Department and booked.

## COUNT I
## FOURTH AMENDMENT VIOLATION
## EXCESSIVE FORCE 42 U.S.C. Sec. 1983

35. Plaintiff incorporates herein paragraphs 1 – 34 above as though fully set forth herein.

36. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures and to be secure in his person, including freedom from the use of unreasonable and/or excessive force against him.

37. On May 3, 2019, the individual defendants used unlawful and unreasonable force against the Plaintiff without lawful justification.

38. Defendants were not justified in using physical force, including taking Plaintiff down, punching Plaintiff in the face, or otherwise striking Plaintiff. No prudent

officer would have used such force against the Plaintiff under the circumstances. It was unreasonable and unnecessary for defendants to have used physical force on Plaintiff's person.

39. Defendants' acts jointly and severally injured Plaintiff.

40. As described above, the conduct of Defendants was intentionally carried out, under color of law and within the scope of their employment, with willful, wanton, reckless disregard, and/or deliberate indifference to the health and welfare, and rights, of Plaintiff, and constituted the excessive use of force in violation of the Fourth Amendment to the Constitution of the United States.

41. As the proximate result of the unlawful and excessive use of force by Defendants, which violated Plaintiff's rights, Plaintiff has suffered and continues to suffer injuries of a personal and pecuniary nature.

WHEREFORE the Plaintiff demands judgment against Defendants Vogiatzis, Griffin, Hammond, and Converse, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

## COUNT II
## FOURTH AMENDMENT VIOLATION
## FAILURE TO INTERVENE 42 U.S.C. Sec. 1983

42. Plaintiff incorporates paragraphs 1 – 41 above as though fully set forth herein.

43. At all relevant times herein, Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures, including the use of excessive force, and to be secure in his

person.

44. During the events described herein, Defendants stood by and failed to intervene to prevent the unconstitutional and unreasonable seizure of Plaintiff's person, and the use of excessive force and subsequent injury caused by the defendants during that seizure. At all relevant times herein, Defendant Officers were acting under color of law and within the scope of their employment.

45. As the proximate result of the failure of Defendants to intervene on behalf of Plaintiff to prevent the use of excessive force, and the unreasonable seizure of his person, despite the clear need and reasonable opportunity to do so, the Plaintiff has suffered and continues to suffer injuries of a personal and pecuniary nature, loss of property, loss of reputation, humiliation, mental anguish, emotional distress, and legal expenses, as alleged herein

WHEREFORE the Plaintiff demands judgment against Defendants Vogiatzis, Griffin, Hammond, and Converse, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

## COUNT III
## FOURTH AMENDMENT VIOLATION UNLAWFUL SEARCH, SEIZURE, AND RESTRAINT
## 42 U.S.C. Sec. 1983

46. Plaintiff incorporates herein paragraphs 1 – 45 above as though fully set forth herein.

47. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures and to be secure in his person from having his liberty unlawfully

restrained.

48. On or about May 3, 2019, Defendants effected the unlawful seizure, detention, and restraint of the Plaintiff, without lawful authority in the form of reasonable articulable suspicion, probable cause, a judicial warrant or writ, or other factual or legal justification.

49. Inv. Griffin and Inv. Hammond impermissibly prolonged the traffic stop beyond the time reasonably required to complete the purpose of the stop when they waited for Inv. Converse to arrive.

50. The second search of Ingram by Inv. Converse was also impermissible.

51. The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. CONST. Amend IV.

52. A police officer may stop or detain a person for investigative reasons when the officer reasonably infers that the person is committing, is about to commit, or has committed an offense, 725 ILCS 5/107-14; Teny v. Ohio, 392 U.S. I, 21, 88 S.Ct. 1868, 1879-80 (1968); *People v. Scott*, 148 Ill.2d 479,594 N.E.2d 217 (1992).

53. "A seizure that is justified solely by the interest of issuing a warning ticket to the driver can become unlawful if its prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

54. The temporary detention of individuals- passengers and drivers alike- during a vehicle stop constitutes a seizure of"persons" within the meaning of the fourth amendment. *People v. Gonzalez*, 204 Ill.2d 220, 225.

55. An officer may expand the scope of an initial detention if he or she can articulate facts leading to something more than an inchoate and unparticularized hunch. *Alabama v. White*, 496 U.S. 325, 329 (1990); *Scott*, 148 111.2d at 503.

56. “Where the police merely suspect defendant has committed a crime and arrest him before commission of the crime is verified, the arrest cannot be sanctioned.” *People v. Rodriquez*, 153 Ill.App.3d 652,659,505 N.E.2d 1314, 1319 (2"d Dist, 1987).

57. Inv. Griffin and Inv. Hammond were acting on an unparticularized hunch when they waited for Inv. Converse to arrive.

58. Inv. Griffin and Inv. Hammond’s traffic stop was prolonged beyond the time reasonably required to complete its purpose.

59. The second search of Ingram does not fall within an exception to the fourth amendment and therefore is an illegal search.

60. Individual conduct as described hereinabove was done with willful, wanton, reckless disregard, and/or deliberate indifference to the rights of the Plaintiff.

61. Defendant’s individual acts violated Plaintiff’s right to be free from unreasonable seizure, and unlawful arrest, as provided in the Fourth Amendment to the United States Constitution and has caused Plaintiff to suffer and will in the future continue to suffer, severe damages including loss of reputation, mental anguish, emotional distress and legal expenses as alleged herein.

WHEREFORE, the Plaintiff demands judgment against Defendants Vogiatzis, Griffin, Hammond, and Converse, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

COUNT IV
42 U.S.C. Sec. 1983 VIOLATION
CITY OF AURORA
(MONELL LIABILITY)

62. Plaintiff incorporates herein paragraphs 1 – 61 above as though fully set forth herein.

63. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth and Fourteenth Amendments to the Constitution of the United States to be ensured due process, and be free from unreasonable seizures, including the use of excessive force, and to be secure in his person.

64. During the events described herein, certain Supervisory Personnel, agents or employees of the City of Aurora with policy-making authority whose names and titles are presently unknown to Plaintiff, had a duty to supervise and set policy and standards for the use of force, and procedures and standards concerning arrests, as well as to hire, discipline, and fire Aurora Police Officers.

65. This individual or these individuals failed to adequately supervise, train, or set policy to prevent violations of the Plaintiff's constitutional rights. These individuals encouraged the violation of Plaintiff's rights in that they failed to ensure that standards were set or followed with regard to the use of force, and that arrests and seizures were not made without probable cause or the appropriate legal standard.

66. These individuals failed to adequately supervise, train, or set policy to prevent violations of Plaintiff's constitutional rights in that these individuals tolerated repeated violations of the civil rights of defendants at the hands of Defendants Vogiatzis, Griffin, Hammond, and Converse, and did nothing to correct, train, discipline, or otherwise relieve Defendants of authority or duties involving the use of force, the

decision to search a subject's person, or the decision to arrest until Plaintiff had been injured thereby.

67. As a result of the individual or individuals failure to properly discipline or investigate officers, including specifically Defendants Vogiatzis, Griffin, Hammond, and Converse, City of Aurora police officers, including specifically defendants were encouraged and led to believe that their improper and unconstitutional conduct would not be scrutinized or punished. These failures created an informal policy or custom which resulted in the violations of Plaintiff's rights alleged herein.

68. This complete failure to address, discipline, or respond in any way to the continued unconstitutional actions of Defendants, committed on both Plaintiff and other individuals, was the proximate cause of the violations of Plaintiff's constitutional rights resulting from Defendants' actions on May 3, 2019.

69. The supervisory failures of these individuals and unknown supervisory officers were the direct and proximate cause of the constitutional violations visited on Plaintiff.

70. As the proximate result of these individuals failure to supervise or otherwise set or enforce policy and procedures, the defendant City failed to prevent and in fact encouraged and caused the use of excessive force and the unreasonable, search, seizure and detention of the Plaintiff.

71. Prior to May 3, 2019 through the actions and inactions of its policy-making personnel, the City of Aurora developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Aurora, which proximately caused the violation of Plaintiff's rights.

72. It was the policy and/or custom of the City of Aurora and its officers to inadequately and improperly investigate or resolve complaints of police misconduct relating to arrests and the use of excessive force and such acts of misconduct were instead tolerated by the City of Aurora.

73. It was the policy and/or custom of the City of Aurora to inadequately supervise and train its police officers, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in despite complaints from citizens.

74. As a result of the above described policies and customs, police officers of the City of Aurora, including the Defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

75. The City of Aurora failed to train and supervise its officers, and failed to implement policies, to prevent constitutional violations relating to the use of excessive force on subject citizens and the arrests and detentions of citizens without probable cause.

76. The City of Aurora failed to monitor and supervise its officers regarding the use of force, failed to make reasonable regular inquiries into, or otherwise determine the level of force being utilized by officers during encounters with citizens including arrests, and failed to take reasonable steps to prevent its officers from using excessive force.

77. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of Aurora to the constitutional rights

of persons within the City, and were the proximate cause of the violations of Plaintiff's rights alleged herein. As a direct and proximate result of the municipality's failures and actions, Plaintiff suffered physical injury, loss of reputation, humiliation, mental anguish, emotional distress, and legal expenses, as alleged herein.

WHEREFORE the Plaintiff demands judgment against the Defendant, City of Aurora, for compensatory damages, costs incurred herein and attorney fees in a sum in excess of $100,000.00.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted by:

By: /s/ Geneva L. Penson

GENEVA L. PENSON
Attorney No. 6275680
52 W. Downer Pl., #301
P.O. Box 2285
Aurora, IL 60507-2285
(630) 844-6960
geneva_penson@att.net